No. 04-358

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 93

JEFFREY JOHN LOUT,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Respondent.


APPEAL FROM:    The District Court of the Twenty-First Judicial District,
                    In and For the County of Ravalli, Cause No. DC 2002-79,
                    Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Jeffrey John Lout, Pro Se, Shelby, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General;  Jennifer Anders,
        Assistant Attorney General, Helena, Montana

        George H. Corn, County Attorney, Hamilton, Montana


                    Submitted on Briefs:  February 23, 2005

                           Decided:  April 19, 2005

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Jeffrey Lout appeals from the denial of his petition for postconviction relief. We affirm.

¶2     We address the following issues on appeal:

¶3     1. Whether Lout validly waived his right to appeal or otherwise challenge his conviction and sentence.

¶4     2. Whether Lout's attorney afforded ineffective assistance of counsel in advising him to enter into the plea agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     Lout was first charged by Information with two counts of sexual intercourse without consent (common scheme), one count of sexual intercourse without consent, and one count of sexual assault on May 22, 2002. These charges related to sexual relations Lout engaged in with minors during his tenure as a Boy Scout leader and as a boxing coach. After Lout was incarcerated in the Ravalli County Detention Facility, Lout allegedly performed oral sex on a fellow inmate while the inmate slept. In response to a subsequent investigation regarding this incident, and while proceedings were progressing on the first four changes, Lout was charged by Amended Information with an additional count of sexual intercourse without consent.

¶6     Lout at first pled not guilty to the charges, but then on January 3, 2003, on advice of his counsel, Lout entered into a negotiated plea agreement. In exchange for a guilty plea on two charges--sexual intercourse without consent, and sexual intercourse without consent

2

(common scheme)--the State agreed to dismiss the additional charges. The agreement explicitly stated that it was an "open" plea, meaning that there was no agreement as to the sentences that might be imposed on the two charges. It stated that, "In this case, the maximum sentence is imprisonment for two (2) life terms or no more than 200 years imprisonment, plus any applicable penalty enhancement provisions, and $100,000 in fines." It also stipulated that the sentences should run concurrently with each other. Further, the plea agreement included the following waiver: "By pleading guilty, the Defendant waives his right to appeal or otherwise challenge his conviction by direct appeal, habeas corpus, or post-conviction relief."

¶7    Lout alleges that his counsel presented him with the proposed plea agreement at 3:45 in the afternoon and informed him that it needed to be filed by 4:00 p.m. He claims that he was hurried into signing the agreement and was not informed that the agreement could subject him to a life sentence.

¶8    Five days after Lout signed the plea agreement, on January 8, 2003, the District Court held a change of plea hearing. The court asked Lout if he understood the import of what he was subjecting himself to by pleading guilty, including the possible sentences and the waiver of rights. Lout replied that he did. The court then ordered a psychological evaluation and, on the basis of the evaluation, other facts of the case, and Lout's prior record, sentenced him to two concurrent terms of life in the Montana State Prison to run concurrently with an unrelated sentence Lout was already serving.

¶9 Lout's sentence was subsequently affirmed by the Sentence Review Division of this Court. Lout then filed a petition for habeas corpus in this Court. Because his petition alleged ineffective assistance of counsel, we held that his claims were inappropriate for habeas corpus relief and forwarded his petition to the District Court, stating that postconviction relief is the proper proceeding through which to raise claims of ineffective assistance of counsel. *See Order*, Cause No. 03-767 (December 9, 2003) (citing *Schrapps v. Mahoney*, 2001 MT 214, ¶ 5, 306 Mont. 402, ¶ 5, 36 P.3d 338, ¶ 5). The District Court then ruled on his petition, denying postconviction relief on the grounds that he validly waived his right to any form of appeal and that he did not receive ineffective assistance of counsel.

¶10 Lout now appeals, arguing that the waiver of his rights in the plea agreement, and his guilty plea, were invalid, that his sentence is unconstitutional, and that his counsel below rendered ineffective assistance in convincing him to sign the plea agreement.

**STANDARD OF REVIEW**

¶11 In an appeal from the denial of a motion for postconviction relief, we review the district court's findings to determine whether they are clearly erroneous, and the court's conclusions to determine whether the court was correct. *State v. Niederklopfer*, 2000 MT 187, ¶ 7, 300 Mont. 397, ¶ 7, 6 P.3d 448, ¶ 7 (citing *State v. Wilson*, 1999 MT 52, ¶ 11, 293 Mont. 429, ¶ 11, 976 P.2d 962, ¶ 11).

¶12 Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Kougl*, 2004 MT 243, ¶ 12, 323 Mont. 6, ¶ 12, 97 P.3d 1095, ¶ 12 (citing *State v.*

4

*Herrman*, 2003 MT 149, ¶ 18, 316 Mont. 198, ¶ 18, 70 P.3d 738, ¶ 18).  Therefore, our review of such claims is *de novo*.  *Kougl*, ¶ 12 (citing *Herrman*, ¶ 18).

## DISCUSSION

## ISSUE ONE

¶13    *Whether Lout validly waived his right to appeal or otherwise challenge his conviction and sentence.*

¶14    Lout does not explicitly ask us, and did not ask the District Court, that he be allowed to withdraw his guilty plea.  In his *pro se* brief he does attest to his "wanting to proceed to trial" on one of the charges against him included in the plea agreement–sexual intercourse without consent.  However, this desire was not addressed to the District Court at the postconviction relief stage of his proceedings.  There, he attacked the waiver of his right to *appeal* his plea agreement (including his guilty plea and his sentence), but did not state that he wished to withdraw the plea itself.  Therefore, we only address whether his plea agreement is valid and whether his attorney rendered ineffective assistance of counsel in advising him to enter into the plea agreement.

¶15    A plea agreement is a contract subject to contract law standards.  *State v. Keys*, 1999 MT 10, ¶ 18, 293 Mont. 81, ¶ 18, 973 P.2d 812, ¶ 18, *overruled on other grounds by State v. Lone Elk*, 2005 MT 56, ¶ 10, 326 Mont. 214, ¶ 10, 108 P.3d 500, ¶ 10.  Therefore, in order to demonstrate that the plea agreement is invalid, Lout must show that the agreement lacked consideration.  Lout contends he did not receive any benefit from the plea agreement because the penalty he received–two life sentences–was no different from the penalty he would have

5

received if he had gone to trial and been found guilty. He cites no authority for this proposition. As the District Court pointed out, in making the plea agreement the State agreed to dismiss three charges–one of the two counts of sexual intercourse without consent (common scheme), sexual assault, and sexual intercourse without consent. Because the State dismissed these charges Lout avoided three potential life sentences or three hundred years imprisonment, and $150,000 in potential fines. Thus, the State promised to do something–dismiss those three charges–that the law did not require it to do. *See Keys*, ¶ 18 (recognizing as consideration in a plea agreement the State's promise to the defendant to not prosecute his father). We conclude that Lout's plea agreement was supported by consideration and that Lout validly waived any right to appeal or challenge its terms.

## ISSUE TWO

¶16 *Whether Lout's attorney afforded ineffective assistance of counsel in advising him to enter into the plea agreement.*

¶17 Lout also argues that the plea agreement is invalid because he received ineffective assistance of counsel when his appointed counsel advised him to execute the contract. He contends that he was hurried into signing and that he had no idea that he would receive a life sentence. We have adopted the two-pronged test of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, in addressing ineffective assistance of counsel claims. *Kougl*, ¶ 11. Lout must first demonstrate that his counsel performed deficiently or below an objective standard of reasonableness, and, second, "'establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result

6

of the proceeding would have been different.'" *Kougl*, ¶ 11 (quoting *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, ¶ 14, 70 P.3d 1234, ¶ 14). Lout must overcome a strong presumption that his counsel's tactics fall within a wide range of reasonable professional decisions. *Clausell v. State*, 2005 MT 33, ¶ 19, 326 Mont. 63, ¶ 19, 106 P.3d 1175, ¶ 19 (citing *Davis v. State*, 2004 MT 112, ¶ 20, 321 Mont. 118, ¶ 20, 88 P.3d 1285, ¶ 20).

¶18     Lout's counsel's actions clearly fall within this range. First, his counsel negotiated a deal which, as stated above, resulted in the State dismissing three charges against Lout. Second, the District Court specifically asked Lout if he understood what he was pleading guilty to, that the offenses carried the possibility of life sentences, and that he was waiving his right to any appeal. Lout responded that he understood this. Third, the District Court asked Lout if he was satisfied with his counsel's performance. Lout responded affirmatively.

¶19     Lout's argument that his counsel hurried him into signing the plea agreement is without merit. He had the opportunity to withdraw from the agreement at the plea hearing, a full five days later. Whatever the shortcomings of his counsel's communications with him, Lout's statements to the District Court that he understood the potential sentences and that he was waiving his rights to any appeal illustrate that he was not prejudiced by his counsel's actions. Therefore, Lout does not satisfy the second prong of the *Strickland* test, and his ineffective assistance of counsel claim fails. *See State v. Cobell*, 2004 MT 46, ¶ 17, 320 Mont. 122, ¶ 17, 86 P.3d 20, ¶ 17 (concluding that even if the defendant's counsel failed to advise of the possible sentence, because the defendant understood the uncertainty of the open plea agreement he was not prejudiced by his counsel's actions).

¶20    Lout additionally claims that his counsel's ineffectiveness was due to insufficient resources for Ravalli County public defenders.  Because we conclude that Lout was not prejudiced by the alleged ineffective assistance of counsel, we need not address this claim.

**CONCLUSION**

¶21    In accepting the plea agreement, Lout validly waived any right he had to appeal or challenge his conviction and lawfully imposed sentence.  Lout did not receive ineffective assistance of counsel.  We affirm the judgment of the District Court.


/S/ W. WILLIAM LEAPHART


We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JOHN WARNER